JOHN BELL, ADMINISTRATOR OF JOSEPH STOLL, ;DEC'D, v. SAMUEL PRICE.

1. The only grounds to set aside an award, when the submission has been made a rule of a court of record, are (1) That the arbitrators have awarded what was out of their power, as if they award contrary to law. (2) Corruption, or that they have proceeded contrary to the principles of natural justice, though there be no corruption ; and (3) That they have proceeded upon a mere mistake which they themselves admit.

2. The statute contemplates no difference in the power or jurisdiction of the court, or in the mode of proceeding, whether the submission be made a rule of a court of law or equity.

3. The principles upon which relief will be granted against an award are the same in both courts.

4. An award will not be set aside for the same reasons that induce courts to grant a new trial after verdict, and evidence of merits will only be re-

ceived for the purpose of making out such *corruption* or *misconduct* on the part of the arbitrators as would impeach their award.

5. In any such case where the court have power to interfere, misconduct of the arbitrators will not be inferred, unless *all* the evidence before the arbitrators on the point brought in question be laid before the court.

On rule to show cause why award should not be set aside. Certified from the Circuit Court of the county of Sussex under the statute.

The parties by arbitration bonds, submitted their differences to the determination of Robert Hamilton, John D. Everett and Joseph Linn, Esquires, and it was agreed that the submission be made a rule of the Circuit Court of the county of Sussex. Two of the arbitrators, Hamilton and Linn, united in awarding to Bell the sum of $341.93. At the term next after the publication of the award, on the application of Bell, a rule was granted to show cause why the award should not be set aside and that the parties take testimony, &c.

*D. Haines* and *W. Pennington* for plaintiff.

*Ryerson* and *P. D. Vroom* for defendant.

The reasons assigned will appear in the opinion of the court delivered by

WHITEHEAD, J. Various reasons have been assigned against the award, but under the evidence taken by the parties, there are but two which demand the consideration of the court.

First, That the arbitrators made a plain and palpable mistake in allowing a credit to Price for the payment of $701 to Abraham Cruiser, when the same should have been allowed to the said administrator.

Second, That the arbitrators made a like mistake in allowing to Price a credit of $1000 for so much money paid by him to take up a note given by him to the said Stoll in his lifetime.

Stoll and Price had been co-partners in the mercantile business at Branchville in the county of Sussex. On the dissolution of the partnership in 1826, Mr. Stoll took charge of the collection of the debts, and thereby became chargeable with the moneys he might receive, and entitled to allowance for all disbursements made by him in discharge of the liabilities of the

firm. Mr. Price also claimed to be allowed for moneys paid by him on account of debts due by the firm.

A paper entitled " *General Result*," contains the calculation of the arbitrators, and shows the process by which they ascertained the balance due by the defendant, Price. This paper, signed by the two arbitrators who made the award, was with the award delivered to Mr. Bell, and may therefore be considered as part of it, so far as regards the decision of the questions in this case.

The errors, of which Mr. Bell complains, do not appear upon the face of the award, nor upon the accompanying paper containing the calculation of the arbitrators. To prove them, the party must go into the evidence before the arbitrators. The power of the court to do this, is denied by the counsel of Mr. Price. I will not review the numerous conflicting cases upon this subject referred to by the counsel. I have examined most of them, and the conclusion to which I have come is, that so far as regards the questions before us, the principles upon which relief will be granted against the award, are the same at law as in equity. At common law, and prior to the statute of the 9 and 10 *William* 3, corruption in the arbitrators or parties, or a mistake in law or fact in making up an award, could not be pleaded as a defence in an action upon an arbitration bond. The Court of Chancery was the only tribunal that could afford relief to the party. Hence the large jurisdiction formerly exercised by courts of equity over awards. That statute, from which our act of '2 *Dec.* 1794 was taken, varied and greatly narrowed the general jurisdiction of the courts of equity over these matters, by providing that the submission may be made a rule of any of the courts of record, and the further provision in case of disobedience to the arbitration. See 1st and 2d sections of act, *Elm. Dig.* 14. *Rev. Laws* 158. The court in which the submission is made a rule, has jurisdiction of the case by statute, and the power to look into the conduct of the arbitrators and parties, and to set aside the award upon any of the grounds mentioned in the act. The statute contemplates no difference in the power or jurisdiction of the court, or in the mode of proceeding, whether the submission be made a rule of a court of

law or equity. No relief can be properly granted by either court except upon the special grounds mentioned in the act, the misbehavior of the arbitrators, or when the award was procured by corruption, or other undue means. The reasoning of Lord Chancellor Brougham, in *Nichols* v. *Roe*, 3 *Mylne & Keen* 431, upon this subject, appears to me conclusive. The question discussed by the Chancellor in this case was, how far an award made upon a submission pursuant to the statute, ousted the jurisdiction of the courts of equity. The parties had agreed that the submission be made a rule of the Court of King's Bench, or other court of record. The Chancellor remarks that the case was altogether under and within the statute of 9 and 10 *W*. 3 *c*. 15, and consequently the proceedings must be governed by that statute, and so must all the rights and equities of the parties. After commenting upon the opinions of Lord Eldon in 14 *Vesey* 265 and 530, and the opinion of Lord Loughborough in 2 *Vesey* p. 451, he expresses his surprise that any doubt should ever have been entertained on the subject. "For, (he says,) the statute is undoubtedly repealed in its most express provisions, if the jurisdiction continues to reside in this court, after the parties have resorted elsewhere under the act. There can be no more plain or distinct terms used than those of the latter part of the first section of the act. After directing process of contempt to issue for enforcing performance of the award, it proceeds thus : ' *which process shall not be stopped or delayed in its execution by any order, rule, command, or process of any other court, either of law or equity, unless it shall be made appear on oath to such court that the arbitrators or umpire misbehaved themselves, and that such award, arbitration, or umpirage was procured by corruption or other undue means.*' I may stop here to observe, that the courts have long extended this exception to cases of mistake in law. *Kent* v. *Elstob*, 3 *East*. 18. Now this prohibition is plainly made to preclude all review of the awards, either at law or in equity, excepting on those special grounds. But it is also to be intended as giving to that court only, in which the submission is made a rule, the power of reviewing the award."

Again he says, " The words used in the exception to the prohibition of the first section, that the ground of impeachment

must be made to appear on oath to such court, are the words always used to describe proceedings by affidavit; and the courts of law and equity are here, and they are throughout the statute, mentioned in the same manner, so that the proceeding is to be alike in all—not a submission made a rule of the court of law, and then a bill filed in equity to set it aside; but the submission to be made a rule either of a court of law or a court of equity, and application made to the same court by affidavit on the behalf of those seeking to impeach the award." The same doctrine is found in 2 *Chitty's General Practice.* "The principles and grounds upon which relief will be granted or refused, are the same at law as in equity, and the decisions will therefore be analagous and applicable." In *Sherron* v. *Wood*, 5 *Halst.* 7, Judge Ford, in speaking of the jurisdiction of courts of law over awards when the submission has been made a rule of court, says it is an equitable jurisdiction, and therefore they will listen to every ground of relief that may be shewn for cause in a court of equity.

Assuming, then, that this court has equity jurisdiction in the matter, the next question which demands the consideration of the court is this:—Admitting that the evidence taken in the cause proves the mistakes complained of, yet, as they do not appear upon the award, nor upon the accompanying paper, and as the arbitrators do not appear to be satisfied of the mistakes, does it furnish sufficient grounds to set aside the award? Chancellor Kent, 2 *John. Ch. R.* 339, reviews the cases upon this subject. The doctrine approved of by the Chancellor was laid down by the court in 2 *Ves. Jr.* p. 15. The court in that case says: "The only grounds to set aside an award are (1) That the arbitrators have awarded what was out of their power, as if they award contrary to law. (2) Corruption, or that they have proceeded contrary to the principles of natural justice, though there be no corruption, as if without reason they will not hear a witness. (3) That they have proceeded upon a mere mistake *which they themselves admit.*" It was upon the second ground that this court in *Burroughs* v. *Thorne*, 2 *South. R.* 777, set aside the award. The arbitrators without reason would not hear the testimony of witnesses free from all legal exception. In *Kleine* v.

*Catara* 2 *Gallison, C. C. Rep.* 61, the court says, "In awards, the judgment of the arbitrators or the referees is conclusive upon all matters of fact. If, however, there be a mistake of fact (as in calculation apparent upon the face of the award), or if the referees are satisfied of a mistake of fact, though not apparent upon the face of the award, and certify their wish to correct it, the award will be recommitted to rectify the mistake. See also 13 *East.* 357 ; *Anon.,* 1 *Chit. Rep.* 674 ; *Bontillier* v. *Thick,* 1 *Dowl & Ry.* 366 ; *Cramp* v. *Simons,* 1 *Bingh.* 104. Evidence of the merits is never permitted for the purpose of shewing what the merits were, excepting as they may tend to shew such a case of misconduct on the part of the arbitrators as would give a court of equity jurisdiction. 2 *Chitt. Gen. Practice,* 120. The same author, after reviewing numerous cases upon the various grounds of setting aside awards, remarks : " In general it is required that a material mistake in fact or law, admitted by an arbitrator to have been made, must be verified by some written document, and not merely established by affidavit." To the same effect is the opinion of the Chancellor in 1 *Green Ch. Rep.* 301. " A mistake in the law must be a plain one, and upon some material point affecting the case, and the mistake in fact must in general be such *as the arbitrator himself would admit,* such as a miscalculation in an account and the like." In the case of *Hall & Hinds,* 2 *Man. & Grang.* 847, the award was set aside for a gross mistake made by the arbitrators in adjusting the accounts of the parties. The mistake did not appear upon the face of the award, but was made to appear to the satisfaction of the court by *the affidavits of the arbitrators themselves.* The blunders were so gross, as to amount in the judicial sense of the term, to misconduct on the part of the arbitrators. If this court looks into the evidence before the arbitrators for the purpose of determining whether they did not err in making these allowances to Mr. Price, it will be extending the power of the court farther than is warranted by the general rule. By some decisions in Pennsylvania and some of the southern states, it appears their courts have assumed and exercised the same power over awards as they do over verdicts at law, and have set them aside for the

VOL. I.                  C

same reasons that would be sufficient to grant a new trial. But I do not see how they can be sustained by any fair and reasonable construction of the statute. It was clearly the intention of the Legislature that awards should be final, except in cases where the arbitrators *misbehaved* themselves, or the award was procured by *corruption*, or other *undue means*. To give the construction to the words *undue means* that has been done by these decisions, is to defeat the important object of the Legislature in authorizing this cheap and easy mode of settling controversies.

If, however, I am mistaken in my views of the law, and this court has the power to look into the evidence before the arbitrators to determine whether they made the alleged mistakes in matters of fact to the prejudice of Mr. Bell, then it is certainly incumbent upon him to prove them. This mode of trial is always regarded by courts with great indulgence, and every reasonable intendment will be made in support of awards. The party who charges the arbitrators with having committed errors in fact, and who seeks on that ground to set aside their award, must lay before the court all the evidence in reference to the alleged errors which was before the arbitrators. For without the whole evidence, how can this court say the arbitrators were mistaken? It will not do to produce a part of the evidence raising a *prima facie*, and it may be a strong case of mistake and withhold the remaining part, or seek to throw upon the other party the burthen and expense of producing it. The court cannot intelligently decide that the arbitrators erred without having before it the same evidence upon which they acted: and if the burthen of proving the mistake is upon the party charging it, then upon him rests the burthen of producing the whole evidence in relation to it.

With regard to the first error, to wit: the credit to Price of $701 paid to Coursen, it appears to me from the deposition of House, taken in connection with the note and endorsement, that the arbitrators erred in allowing to Price this credit. House testifies that in 1827 he paid to Mr. Coursen $701 for Price. This is not denied by the counsel of Mr. Bell, and was this the only evidence, the arbitrators were certainly right in making the allowance. But Mr. Bell contends that it appears by the note

which is produced by him from among the papers of his intestate, that this payment by Price was afterwards adjusted between the parties, and that part of it refunded to him which Stoll was bound to pay. The note is produced, and by an accurate calculation it appears there was due on the day House testifies he made the payment for Price, the sum of $701. Upon this payment being made, the note belonged to Price, and became a voucher in his hands for so much money paid by him on account of the late firm. Afterwards (but the time is uncertain as the endorsement is without date,) Price endorsed thereon the sum of $400 received of Mr. Stoll. It is to be presumed that upon this payment being made, the note was delivered to Stoll, as it was found among his papers by the administrator, and by him produced before the arbitrators. This is all the evidence produced before the court in reference to this alleged mistake. And if there were no other before the arbitrators, they most certainly erred in allowing Mr. Price this credit; for the endorsement by Price of the $400, shows that the payment of $701 made by him was afterwards arranged between the parties. It can be accounted for upon no other principle. Price was entitled to, and actually had in his possession, the note, after the payment made by him to Coursen, as is shown by his endorsement thereon. After the death of Stoll it is found among his papers. Under these circumstances I do not see how Price could successfully establish a claim for a credit for monies paid by him on this note.

Here, however, the difficulty which I before suggested arises. Were the deposition of House, and the note and endorsement the only evidence before the arbitrators in reference to this point in this case? I am not satisfied, from a careful examination of the depositions, that we have before us all the evidence which the arbitrators had. The three arbitrators were examined, Mr. Everett in behalf of Bell, and the others on the part of Price. Mr. Everett, who refused to sign the award, does not state the grounds upon which he refused to unite with the other arbitrators. He does not state that he dissented on account of the allowance of this credit to Price. Nor does he state what the evidence before the arbitrators was, except the note upon which

the payment was made.   He testifies that they commenced taking testimony in the cause on the 11th November, and closed on the 14th December following.   He took notes of the evidence, and could therefore have stated what other evidence, if any, was produced by the parties.   Messrs. Hamilton and Linn, the other arbitrators, were examined at great length by the parties, but neither of them is asked the grounds upon which this credit was allowed to Price, nor the evidence in relation to it.   It can, however, be fairly inferred from the deposition of Mr. Hamilton, that there was other evidence before them in relation to this credit, for he says, " there was a great mass of oral and documentary testimony in the cause used before the arbitrators.   The arbitrators were engaged in the deliberation and investigation of this suit as many as four or five days after the evidence and arguments of counsel had closed.   The accounts on both sides embraced a great variety of items.   There were many items of the accounts that required the testimony in relation to other items to understand them and arrive at correct conclusions."

Assuming that this is the kind of mistake which a court can look into, (which, however, I cannot assent to), it appears to me that to set aside this award under these circumstances would be establishing a most dangerous precedent.   There is nothing in the testimony which shows that Mr. Bell could not have laid before this court all the evidence before the arbitrators upon which Price claimed this credit; or, if there was no other than that I have mentioned, then the fact that there was no other, should have been made appear.   Mr. Everett, the dissenting arbitrator, took notes of the evidence ; was examined as a witness upon this application before the Commissioner, and could have stated what other evidence, oral or documentary, if any, was before the arbitrators, which may have influenced their judgment. This witness had no difficulty in stating from his recollection and his notes, what evidence the arbitrators had before them in reference to the other mistake complained of, and that there was no other testimony in relation to it.

The same difficulty exists with regard to the other mistake complained of.   There is only the deposition of Baxter and the note before the court, to prove the mistake, when it appears by

the testimony of Mr. Everett, and of Mr. Johnson, one of Mr. Bell's counsel, that Mr. Ryerson and Mr. Morford, the President and Cashier of the Sussex Bank, where the $1000 note was discounted, were examined before the arbitrators in reference to this credit. Mr. Everett, after stating that the arbitrators had before them the deposition of Baxter the testimony of S. D. Morford and David Ryerson, says, " I do not remember of there being any testimony from any other witness in relation to that note, and I believe there was not." How can this court say that the arbitrators erred in respect to this note, without having before it the evidence of these gentlemen, which may very properly have influenced the minds of the arbitrators, and might remove any doubts we might entertain of the propriety of this allowance ?

If the principle should be established that awards may be set aside under the circumstances in which this case is before the court, respectable and competent men will hesitate to act as arbitrators. They will not subject themselves to the hazard of having their judgments set aside upon a partial representation of the case to the court by a dissatisfied party.

In my opinion the Circuit Court of the county of Sussex should be advised to discharge the rule to shew cause, but without costs either in this court or in the circuit, as Mr. Bell is acting in the matter in a representative character and in good faith, and enough is disclosed in the affidavits to justify him in taking the opinion of the court upon the sufficiency of the award.

THE CHIEF JUSTICE, and Justice RANDOLPH concurred.

Justices NEVIUS and CARPENTER did not hear the argument and expressed no opinion.

CITED *in Taylor* v. *Sayre & Peterson,* 4 *Zab.* 650; *Richardson* v. *Lanning,* 2 *Dutch.* 132.